THOMAS McGRAW v. THE DETROIT FREE PRESS COMPANY.

*Libel and slander—Cause of action.*

The lessee of a stall in a public market, where he was engaged in selling tobacco, cigars, etc., brought an action for libel for the publication of an item stating that the market was not a howling success, and at no time were there more than a dozen people in the market on Saturday night. And it is held that the apparently harmless item cannot be tortured by inducement, innuendo, or proof into a libel against the plaintiff or his business.

Error to Wayne. (Hosmer, Reilly, and Brevoort, JJ.) Argued February 12, 1891. Decided April 17, 1891.

Case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*E. S. Grece,* for appellant, contended:

1. The words complained of need not name the plaintiff; citing *Wesley v. Bennett,* 5 Abb. Pr. 498; *Lewis v. Soule,* 3 Mich. 514 (note); and an action for libel may be sustained by one individual of a number, libeled in the same article, who are engaged in the same business; citing *Ryckman v. Delavan,* 25 Wend. 186.

2. The rule governing an action of libel where it relates to a thing (or property) is not the same as where it relates to a person. "Where the words *prima facie* apply only to a thing, and not to a person, still, if the owner of the thing can show that the words substantially reflect upon him, he may sue without giving proof of special damage, and without proving malice;" citing 13 Amer. & Eng. Enc. Law, 394; Odgers, Lib. & Sland. 131; *Ingram v. Lawson,* 6 Bing. N. C. 212; *Solomon v. Lawson,* 8 Adol. & E. (N. S.) 823.

3. In determining whether certain language charged as libelous is sufficient to sustain an action, the court must consider not the actual words alone, but also the sense and meaning, under the circumstances of the publication, which such language may fairly be presumed to have conveyed to those who read it; citing *Bettner v. Holt,* 70 Cal. 270.

*John A. Bell (Dickinson, Thurber & Stevenson,* of counsel), for defendant.

MORSE, J. October 11, 1886, there was published in the Detroit Free Press, a newspaper published by the defendant company in the city of Detroit, the following item:

"The Princess market is not a howling success. At no time were there more than a dozen people in the market on Saturday night."

The plaintiff filed his declaration in the Wayne county circuit court, alleging in substance that the Princess Produce & Commission Company, a corporation, was the owner of a large frame building known as the "Princess Rink," situated on High street west, between Second and

Third streets, in Detroit, and had converted the same into a public market for the sale of various things and articles, naming them, and various other articles for human consumption and use of the public generally, and had divided said building into stalls or divisions, to be rented out to persons wishing to engage in the business of buying and selling goods in said market; that he, on the 21st day of August rented one of the stalls in said market for the purpose of selling tobacco, cigars, and various other articles usually sold in such places, and at great cost and expense obtained a lease of said stall for five years from the month of March, 1887, which was of the value of $1,000 per year, and also at great cost and expense fitted up and stocked said stall for the purpose or carrying on business therein, the expense of purchasing merchandise for the same being $500, and also went to great cost and expense in building up his said business in said stall and market; that his business had become a means of great gains and profit, and his said stall, by reason of its favorable location, and the good name that the said market had justly obtained, became and was the resort of a great many persons for the purpose of purchasing all desired articles, and plaintiff's stall became a favorite and desirable place at which the public came to purchase and trade with plaintiff, so that the plaintiff was making and would have continued to make, above all outlay and expense, $50 per week; yet the defendant, knowing all this, and wickedly and maliciously intending to injure the said plaintiff in his said business and trade, and to prevent him from making any gains or profits therein, did compose and publish the said article.

"And plaintiff avers that the said article so published by the said defendant in said daily newspaper called the 'The Detroit Free Press' on the 11th day of October, 1886, at the city of Detroit aforesaid, was in every par-

ticular false, wicked, and malicious; that the defendant well knew when it published said article that the same was false; that the assertion in the first line of said article, to wit, the following, 'The Princess Market,' meant the said market in which plaintiff's stall is located, and was and is a part of, alluded to by thus indicating the said Princess market, the stall business and occupation of the plaintiff situated therein; and also the further words in said first line and sentence, as follows, 'is not a howling success,' meant and was intended to mean that the said Princess market was not only not a successful business undertaking, and a proper and suitable place at which to trade and buy all kinds of food, provisions, cigars, candies, tobaccos, school books, papers, pens, ink, etc., but the said language also referred to the said business and trade of plaintiff in the said market; and further that the said word 'howling,' placed before the word 'success,' in said first sentence of said article, was so placed there by the defendant for the purpose of conveying the idea of a slur and a sense of reproach and slander to the minds of the public in general, and to the readers of said paper, and any and all persons trading and about to trade in said market and at plaintiff's said stall, and that the said market was an utter and entire failure, as well as plaintiff's said business, and that the said market, and all the efforts of plaintiff to establish and build up in the said market a business therein, were wholly without avail, and that the said market and plaintiff's business did not receive and was not worthy to receive any patronage or support from the public, and that all the good opinion, name, fame, and credit so justly acquired and obtained of said market and said plaintiff's business therein, as aforesaid, were wholly false, unfounded, and a subterfuge to deceive the public.

"And plaintiff further avers that the said sentence and clause in said article, in the language following, to wit: 'At no time were there more than a dozen people in the market Saturday night,'—referred to and meant the Princess market, and the said stall and business of the plaintiff therein, and the 'Saturday night' mentioned therein meant the Saturday night of October 9, 1886; that the said sentence and clause in said article was false and untrue in every particular; that wherein, in said last sentence, it is stated that 'at no time were there more

than a dozen people in the market on Saturday night,' plaintiff avers that, instead of the statement being true as to the number of people at any time in the said market, there were at no time less than three hundred people in said market, who had come there for the purpose of trading therein, and to buy goods of all kinds kept there for sale by plaintiff herein.

"Plaintiff therefore avers that said last sentence and clause was falsely, maliciously, and wickedly composed and published by the defendant for the purpose of discouraging, hindering, and preventing people and the public generally from resorting thither to trade and purchase goods and wares, and to injure, wrong, oppress, and ruin him in his said business in the said market by causing the people to believe and to think that the said market was not a place where it was proper, safe, or advantageous for persons and the public to trade and to purchase goods, provisions, wares, and merchandise kept there for sale, and especially by the plaintiff; and that the publication of the said sentence and clause had the effect upon and with the public of causing a false impression and opinion to get abroad that the said market was not a proper or suitable place at which to resort for the purpose above stated, and was not and ought not to be patronized by the public."

The declaration further alleged that by means of such false publication the plaintiff had been greatly damaged in his said business, and, because the public believed it to be true, they stopped buying or trading at the said market and at plaintiff's stall therein, which resulted in a great loss to plaintiff in his said business, to wit, a loss of $100 per week in his profits; and that he was also damaged in his leasehold in said market, to wit, a loss of $1,000 per year.

To this declaration the defendant demurred as follows:

"And the said defendant says that the said declaration is not sufficient in law,—

"1. Because the words complained of, as set forth in said declaration, are not, in their natural and ordinary signification, libelous as respects said plaintiff.

"2. Because there are no matters of inducement or

extrinsic facts set up in said declaration to warrant an extension of the meaning of the alleged libelous words beyond what they naturally imply.

"3. Because the alleged matters of inducement or extrinsic facts set up in said declaration are not supported by any warranted *innuendo* sufficient with such inducement to give the said plaintiff a right of action.

"4. Because the alleged libelous words complained of are incapable of the meaning attached to them by the averments contained in said declaration.

" 5. Because the declaration is in other respects uncertain, informal, and insufficient."

The court below sustained the demurrer, and rendered judgment for the defendant. This action is assigned as error.

It is apparent that, if the plaintiff has a cause of action against the defendant because of the publication of this item, then every other stall-keeper or person connected in business with said Princess market also has a cause of action growing out of the same publication. The plaintiff's counsel, in his brief, admits that the first ground of demurrer, if taken entirely separate and as a distinct proposition, is maintainable, but claims that, if the market was injured by the publication, he was also injured, his business being a part of the said market. We hardly think that the market could have been injured by this item. It is not easy to perceive why the published fact or untruth that but few persons attended the market on any certain night could injure the persons selling goods therein. But at any rate this apparently harmless item cannot be tortured by inducement, *innuendo*, or proof into a libel against the plaintiff or his business.

" The *innuendo* helps nothing, unless the words precedent have a vehement presumption of the *innuendo*." *Castleman v. Hobbs*, Cro. Eliz. 428.

Nor can words be proved to have an entirely different meaning from their plain import, except perhaps in cases

where they can be shown to have been spoken or written ironically.

If this item can be considered a libel at all it is a libel of a thing, to wit, the Princess market. The plaintiff was not the owner of the thing. He only had a place within it, in common with a large number of other persons. And, although the declaration alleges malice in the publication of the article as against him and his business, and avers special damage resulting therefrom, we think the language cannot be construed as specially referring to the plaintiff or his business. Nor can the item be considered as a reflection upon a class to which the plaintiff belongs. It is simply a statement that the market was not a success in the matter of the attendance of the public upon it. It is difficult to perceive how it could be proven that this simple item was aimed specially and maliciously at the plaintiff or his business; and malice must be shown in such a case against the plaintiff, as a thing has no rights, and no wrong can be done to it, and language which merely concerns and affects a thing cannot be actionable *per se.* Nothing in the article shows any reference to the plaintiff, nor can any inducement or *innuendo* in the declaration help it, by enlarging its meaning or making such meaning specific as to plaintiff. If the words used are not capable of bearing a specific application to plaintiff it is the duty of the court to stop the case before it reaches the jury. Nor can it be considered a libel upon plaintiff's business. Nothing is said in derogation of the place where the market is held, nor of its accomodations or its suitability as a market, nor of the quality of the goods there offered for sale. The only thing, as before said, is a statement that the market was not a success because but about a dozen persons attended it on a certain Saturday night.

85 MICH.—14.

We cannot possibly conceive how the plaintiff could have been injured by this publication; but, if he was, there is no possible warrant in the language used that it was maliciously directed against him. And we can find no adjudicated case tending in the slightest to support the proposition of the plaintiff that he ought to have been permitted to go to a jury upon the publication and his declaration thereon.

The judgment is affirmed, with costs.

CHAMPLIN, C. J., MCGRATH and GRANT, JJ., concurred. LONG, J., did not sit.